[No. 10954-2-III.    Division Three.    March 16, 1993.]

DAVID L. JONES, ET AL, *Respondents*, v. HALVORSON-BERG,
ET AL, *Defendants*, FLOUR CITY ARCHITECTURAL
METALS CORP., *Appellant.*

*Michael J. McMahon, Raymond F. Clary,* and *Etter & McMahon, P.S.,* for appellant.

*Ross P. White, Gregory J. Arpin, John R. Layman,* and *Layman, Loft, Arpin & White,* for respondents.

MUNSON, J. — David Jones was injured when he slipped and fell while carrying a window at a construction site. A jury found Flour City Architectural Metals Corporation, a subcontractor, liable for his injuries and awarded damages. Flour City appeals, assigning error to the court's: (1) determination as a matter of law that Mr. Jones was not a loaned servant of Flour City based on lack of consent and control; (2) refusal to instruct the jury that the subcontractor's control over the workplace is an element of its liability; (3) admission of lay opinion testimony and a videotape; (4) comments on the evidence and lack of impartiality; and (5) imposition of CR 11 sanctions.

On March 9, 1981, David Jones was hired as a general laborer by Halvorson-Berg, the general contractor, to work on the Wagner Hall remodeling at Washington State University. Flour City, a subcontractor, was responsible for manufacturing and installing the windows in Wagner Hall.

Delivery of the windows to the site was delayed. Once the windows arrived, Richard Benzel, Halvorson-Berg's field superintendent, agreed to help Flour City by providing two laborers to unload windows from a trailer truck and carry them to the installation locations. On March 21, Mr. Benzel directed Peter Lazzarini, Halvorson-Berg's foreman, and Mr. Jones to the truck to unload the windows.

Based on Mr. Benzel's decision before Flour City arrived at the site, the Flour City truck was parked 30 or 40 feet from the front steps of the building. The path from the truck to the steps was covered with dirt and pea gravel. Mr. Lazzarini testified it would have been impossible to clean up all the gravel without paving the entire area.

Neither Mr. Lazzarini nor Mr. Jones had carried this type of window before. The windows were large and cumbersome, weighing over 200 pounds each and were carried by their attached handles. No equipment was provided by Flour City for carrying the windows. Mr. Benzel did not give any instructions on the method of carrying the windows. Flour City's superintendent, Robert Shilts, told Mr. Lazzarini where to take the windows; the parties dispute whether he instructed on safety procedures or methods of carrying. Mr. Lazzarini and Mr. Jones physically lifted the windows down off the truck, carried them by hand to the building and up 13 steps to the main level and then to one of four levels for installation.

On the fourth day of carrying windows, Mr. Jones slipped on the pea gravel while carrying a window, injured his back and was unable to continue working. Since then he has undergone two back surgeries and is permanently disabled.

Mr. Jones brought a negligence action against several parties, including Flour City.[1] Trial was held in May 1986. In a special verdict, the jury found Flour City negligent but not the proximate cause of injury. A new trial was granted

---

[1]Mr. Jones voluntarily dismissed Washington State University and Halvorson-Berg from the action. Halvorson-Berg was immune from any common law action because Mr. Jones was a covered employee under its workers' compensation coverage. Mr. Jones bases his claim on his contention he was not Flour City's loaned servant.

on a motion alleging jury misconduct. In April 1991, after a second trial, the jury returned a verdict against Flour City, awarding Mr. Jones damages. This appeal followed.

### LOANED SERVANT

██ ██ The trial court decided as a matter of law, after hearing arguments concerning lack of consent and right to control, that Mr. Jones was not Flour City's "loaned servant" and that Washington workers' compensation law did not bar his pursuit of a common law remedy against Flour City. Flour City contends this was a factual issue for the jury. Normally the determination of "loaned servant" status is a factual issue. *Nyman v. MacRae Bros. Constr. Co.*, 69 Wn.2d 285, 288, 418 P.2d 253 (1966). A trial court may not rule as a matter of law on this issue if "substantial evidence [exists] in the record upon which reasonable minds could differ". *Nyman*, at 288; *see also Erickson Paving Co. v. Yardley Drilling Co.*, 7 Wn. App. 681, 686, 502 P.2d 334 (1972).

██ ██ An employee may become the loaned servant of another

> by submitting himself to the direction and control of the other with respect to a particular transaction or piece of work . . . *However, such a relation between the borrower and the servant is not established unless it appears that the servant has expressly, or by implication, consented to the transfer of his services to the new master,* and unless the lender surrenders and the borrower assumes the power of supervision and control."

*Fisher v. Seattle*, 62 Wn.2d 800, 805, 384 P.2d 852 (1963) (quoting 56 C.J.S. *Master and Servant* § 2(d)(2)); *see also Novenson v. Spokane Culvert & Fabricating Co.*, 91 Wn.2d 550, 553, 588 P.2d 1174 (1979).[2] Restatement (Second) of Agency § 227, comments *a, c* (1958) are in accord and further state:

> [Whether an employee is a loaned servant] is a question of fact in each case.

---

[2]Under workers' compensation law, an employment relationship exists if: (1) the employee and the employer mutually consent to the relationship; and (2) the employer has the right to control the servant's physical conduct in the performance of his duties. *Novenson*, at 553.

. . . .
. . . Many of the factors stated in Section 220 [are useful in this determination] . . . Thus a continuation of the general employment is indicated by the fact that the general employer can properly substitute another servant at any time, that the time of the new employment is short, and that the lent servant has the skill of a specialist.

The trial court and Mr. Jones rely on 1C A. Larson, *Workmen's Compensation Law* §§ 48.11-48.12 (1986) for the proposition the consent must be "deliberate and informed", consistent with the general principle that "[c]ommon-law rights and remedies are not lost by stumbling unawares into a new contractual relation. There can be no unwitting transfer from one service to another." *Fisher*, at 806 (quoting *Murray v. Union Ry.*, 229 N.Y. 110, 127 N.E. 907 (1920)).

*Fisher*, at 806 (quoting *Murray*) states the employment contract "cannot be thrust upon the servant without knowledge or consent. . . . He must understand that he is submitting himself to the control of a new master." The focus of the inquiry, therefore, should be on whether the employee understood he was submitting "to the control of a new master", not on whether the employee understood he was giving up his legal rights under workers' compensation law.

At trial, Mr. Jones admitted he was "loaned" to and worked for Flour City; he testified Mr. Benzel, the Halvorson-Berg field superintendent, told him someone from the window company would tell him what to do and left; and Mr. Shilts, Flour City's superintendent, later instructed Mr. Lazzarini, in Mr. Jones' presence, to pack the windows upstairs. Conflicting with this was the testimony of Mr. Lazzarini, Halvorson-Berg's foreman, who testified he remained Mr. Jones' immediate supervisor during the unloading. Mr. Shilts testified he went through Mr. Lazzarini and did not talk directly to Mr. Jones. This constitutes substantial conflicting evidence on the consent issue.

In deciding the control issue, the following factors indicate a master and servant relationship: "an agreement for close supervision or *de facto* close supervision of the servant's work"; unskilled labor; tools supplied by the employer; pay-

ment by time not the job; regular employment over a considerable time; employment in a specific area; regular business of the employer; community custom; belief by the parties there is a master and servant relationship; and an agreement the work is nondelegable. Restatement (Second) of Agency § 220, comment *h*, at 489 (1958).

Here, there is evidence Flour City was responsible for the close supervision of the unskilled labor provided by Halvorson-Berg; Halvorson-Berg backcharged Flour City for Mr. Jones' hourly wage; the job continued several days; and unloading windows was a part of Flour City's regular business.

The evidence indicates Flour City's right to control the unloading of the windows. Mr. Shilts testified his responsibility as Flour City's job superintendent included assessing the jobsite for the best way to handle the windows, meeting and instructing unloading laborers, and looking out for their safety. He also testified he met once with Mr. Jones and Mr. Lazzarini, giving Mr. Lazzarini a blueprint with the location for the windows, instructing on safety procedure and how to carry the windows by the built-in handles. Mr. Benzel testified Mr. Shilts was responsible for planning the manpower needs of off loading and installing the windows and he would have deferred to the glass manufacturer's method of unloading the windows.

This constitutes substantial conflicting evidence on the right to control. Thus, the trial court should have submitted the issues of consent and control, under proper instructions, to the jury. The case is reversed and remanded for a new trial.

Because of the remand, we consider other assigned errors, some of which may recur.

### SUBCONTRACTOR LIABILITY

Flour City contends the trial court erroneously gave instruction 10,[3] without including an instruction that Flour

---

[3]Instruction 10 provides:

"A regulation of this State provides that every employer shall provide and require safety devices, furnish safeguards, and shall adopt and use practices,

City's control of the worksite is a condition of its liability. Flour City's theory of the case was Halvorson-Berg, the general contractor, controlled the safety of the workplace and Mr. Jones was contributorily negligent.

■■ Jury instructions are adequate if, read as a whole, they allow argument of the party's theory of the case, are not misleading, and properly inform the trier of fact of the applicable law. *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 707 P.2d 685 (1985). The trial court is given considerable discretion to decide the wording and specificity of the instructions. *Gammon*, at 617. Instruction 10 accurately reflects WAC 296-155-040 and -105. Other instructions were given on burdens of proof, negligence, contributory negligence and proximate cause.

A general contractor bears the primary responsibility for employee compliance with safety regulations because the general contractor's "innate supervisory authority constitutes sufficient control over the workplace." *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990). But a subcontractor is liable to the extent it controls or creates a dangerous condition, *Stute*, at 461; *see also Husfloen v. MTA Constr., Inc.*, 58 Wn. App. 686, 688-90, 794 P.2d 859, *review denied*, 115 Wn.2d 1031 (1990). A subcontractor is liable for injuries arising from work areas under its control. *Stute*, at 461-64. Liability may arise if the subcontractor contractually assumed responsibility for safety precautions at the worksite or is shown to have been in control of the method of performing the work. *See Bozung v. Condominium Builders, Inc.*, 42 Wn. App. 442, 711

---

methods, operations and processes which are reasonably adequate to render employment and the place of employment safe. Every employer shall do everything reasonably necessary to protect the life and safety of all employees on a job site.

"A regulation of this state provides employees shall attempt to eliminate accidents on the job, shall apply the principles of accident prevention in their daily work and shall use proper safety devices and protective equipment as required by their employment or employer.

"The violation of a State regulation is negligence as a matter of law. Such negligence has the same effect as any other act of negligence, as set forth in instruction number 7."

P.2d 1090 (1985); *Ward v. Ceco Corp.*, 40 Wn. App. 619, 626, 699 P.2d 814, *review denied*, 104 Wn.2d 1004 (1985).

■ Flour City's proposed instructions state, in part: a subcontractor is liable only if the subcontractor (1) controls the workplace (instruction 20); (2) shares control of the workplace with the general contractor, and the subcontractor created the dangerous condition (instruction 21); and (3) has or shares control over the work area in question (instruction 24). These instructions are repetitious. In addition, a trial court is not required to rewrite proposed instructions to conform to the law. *State v. Robinson*, 92 Wn.2d 357, 361, 597 P.2d 892 (1979). The trial court's rejection of the proposed instructions was not error.

EVIDENTIARY RULINGS

Flour City contends evidentiary rulings on the admission of lay opinion testimony and a videotape constituted reversible error.

■ Evidentiary rulings are reviewed for abuse of discretion. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990).

A. Flour City assigns error to the admission of the lay opinion testimony of Daniel Cunningham and Jack Hites who testified they had worked 16 and 30 years, respectively, in construction jobs, part of the time as laborers. Mr. Cunningham was asked about the customary result of a laborer's refusal to do a task. He, and later Mr. Hites, testified based on their experience that a laborer does not ordinarily refuse to do an assigned task because he might get fired.

■ A lay witness may only testify based on personal knowledge. ER 602; *State v. Vaughn*, 101 Wn.2d 604, 611, 682 P.2d 878 (1984). A nonexpert lay witness may only testify in the form of an opinion which is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." ER 701. This rule is based on "the traditional belief that a lay witness is no better equipped than a juror to arrive at an opinion or conclusion from the facts known to the wit-

ness." 5A K. Tegland, Wash. Prac., *Evidence* § 282, at 348 (3d ed. 1989).

While neither Mr. Cunningham nor Mr. Hites had ever worked for Flour City or Halvorson-Berg or at the Wagner Hall remodeling job, their testimony was relevant to explaining a laborer's motivation for not refusing to perform a hazardous task. This was relevant to the issue of Mr. Jones' alleged contributory negligence. There was no error.[4]

■ B. Flour City also assigns error to the admission of a videotape made 10 years after the accident. The videotape demonstrates two men lifting a window off the truck with suction cups onto a dolly on the loading dock[5] at Wagner Hall and rolling it down the hallway. Flour City contends the videotape shows substantially different circumstances from those existing 10 years ago, raising collateral issues and misleading the jury.

> Demonstrative evidence is admissible if the experiment was conducted under conditions reasonably similar to the conditions existing at the time of the event at issue. . . . Whether the similarity is sufficient is a matter for the trial court's discretion. If the similarity is sufficient to justify admissibility, any lack of similarity goes to the weight of the evidence.

(Citation omitted.) *Kramer v. J.I. Case Mfg. Co.*, 62 Wn. App. 544, 555, 815 P.2d 798 (1991).

The differences in circumstances were brought out in the testimony and cross examination of John Tormino, the expert on windows who had produced the videotape. These differences included showing a finished hallway, not a cluttered one; a pickup truck, not a delivery van; a fixed window, not an operable one; and a small glass dolly, not a Sheetrock dolly. Mr. Tormino's testimony sufficiently established the

---

[4]Later in the trial James Durham, an ironworker for 14 years who worked at Wagner Hall for Flour City, testified:
"Q: What's the custom of laborers and an ironworker refusing to do a task?
"A: Well, there's an old saying that they usually use. If you can't cut it, you can't stay." There was no objection to this testimony.

[5]There is testimony the loading dock was otherwise occupied while these windows were being unloaded in 1981.

videotape was adequate for its intended purpose to show an alternative method of carrying the windows. The trial court did not abuse its discretion in admitting the videotape.

C. Flour City contends certain statements of the trial court were impermissible comments on factual matters in violation of Const. art. 4, § 16.

■ Const. art. 4, § 16 prohibits a trial judge from conveying to the jury the judge's personal opinion about the credibility, weight or sufficiency of the evidence. *State v. Eisner*, 95 Wn.2d 458, 461, 626 P.2d 10 (1981). A judge's comment on the evidence is deemed prejudicial unless the record affirmatively shows the contrary. *Seattle v. Arensmeyer*, 6 Wn. App. 116, 121-22, 491 P.2d 1305 (1971).

Flour City's complaints are focused primarily on the court's conduct during the testimony and cross examination of Mr. Tormino. The trial court's statements were directed at counsel to prevent repetitive questioning, waste of time and testimony not based on personal knowledge. Moreover, the parties stipulated Mr. Tormino lacked personal knowledge of the jobsite in 1981. The court's limitations were proper based on the record and the Rules of Evidence. *See* ER 403, 602.

As to the remarks by the trial judge made outside the presence of the jury, they are harmless. *See State v. Studebaker*, 67 Wn.2d 980, 984, 410 P.2d 913 (1966).

■ Flour City also challenges the trial judge's general fairness and impartiality. A judge is presumed to perform his functions "regularly and properly and without bias or prejudice." *Kay Corp. v. Anderson*, 72 Wn.2d 879, 885, 436 P.2d 459 (1967). The statements by the judge cited by Flour City, when read in context in the record, do not overcome the presumption the trial judge functioned without bias.

## CR 11 SANCTIONS

Flour City challenges the imposition of CR 11 sanctions, contending notice was untimely for an evidentiary hearing on the CR 11 sanctions; the allegation made by Flour City was not frivolous; the court improperly imposed CR 11 sanc-

tions as a contempt penalty; and the attorney making the allegation is solely liable for any sanctions, not the law firm.

On May 9, 1990, Flour City made a posttrial motion for a new trial based in part on alleged prejudicial comments by the court during trial. The accompanying memorandum was signed by an associate of the firm on behalf of one of the partners and alleged, for the first time, the trial judge had "laughed" at Flour City's witnesses at an unspecified time during trial.[6] The allegation was not supported by affidavit. Counsel for Mr. Jones vigorously denied the factual basis of the allegation. On May 17, 1990, the trial court, sua sponte, notified the parties in writing an evidentiary hearing as to this unsupported allegation was to be held May 22, at which time the trial court would decide whether to impose CR 11 sanctions and file a complaint with the Washington State Bar Association Disciplinary Board. Flour City moved to strike the hearing and to disqualify the trial judge.

At the hearing Flour City refused to present evidence based on its belief the court should recuse itself. Counsel for Mr. Jones submitted affidavits of counsel and a paralegal who attended the trial which stated they had not observed the alleged laughter. The trial court imposed sanctions of $250 attorney fees and a $500 fine, and required apologies to the jurors and other attorneys; and conditioned purging the sanctions, except for attorney fees, on Flour City's attorney filing a written, sworn acknowledgment the statement was false, or an affidavit stating a good faith belief the allegation was true, naming witnesses.

This case presents an unusual set of circumstances. First, because the memorandum at issue was submitted to support a request for a new trial, the trial judge must consider whether there is a basis for granting the new trial. The trial judge is in the best position to rule on whether the

---

[6]Several references to laughter are made in the report of proceedings, in and out of the jury's presence; no objection or motion follows the references. Laughter does occur sometimes during trials; it is not a rarity. However, if a party believes he has been wronged, at least some comment should be made at the time of the occurrence.

moving party is entitled to a new trial as a matter of law based on what occurred during litigation. The nonmoving party has the right to have the trial judge make the decision and the moving party should not be able to force the judge to recuse himself in ruling on such a motion by including allegations directed at the trial judge himself.

However, once the ruling is made that the alleged facts do not constitute a basis for granting a new trial, consideration of additional motions may require a different judge. If, as in this case, the trial judge is of the opinion that the integrity of the court has been attacked and CR 11 sanctions are appropriate or a contempt proceeding is warranted, then such a hearing should be conducted before another judge. When the subject of the CR 11 hearing is the alleged inappropriate conduct of the trial judge, that judge should not rule on the truth or falsity of the accusations.

Although it is unusual to require a judge to recuse himself from ruling on posttrial matters, the Code of Judicial Conduct, Canon 3(C)(1), requires judges "disqualify themselves in a proceeding in which their impartiality might reasonably be questioned . . .". The trial judge should have disqualified himself and submitted that issue to another judge.

If a hearing is held, a different judge must hear it. If the second judge deems CR 11 sanctions are appropriate, an additional issue is against which attorney or attorneys should the sanctions be imposed.

Flour City contends an associate of the law firm is solely liable under CR 11 because he, not the partner, signed the memorandum. The associate signed "on behalf of [the partner]".

CR 11 imposes certain requirements on the individual who signs the filed document. *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 218, 829 P.2d 1099 (1992).

Because CR 11 is substantially similar to its federal counterpart, federal decisions provide guidance. *Cooper v. Viking Ventures*, 53 Wn. App. 739, 742, 770 P.2d 659 (1989). Flour City relies on two cases. In *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123-27, 107 L.

Ed. 2d 438, 110 S. Ct. 456, 458-60 (1989), the Supreme Court held CR 11 establishes a nondelegable duty of the individual signer, which cannot render the law firm liable for sanctions. In another case, an associate signed the filing underneath the typewritten names of the law firm and senior attorney to the litigation. *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962 (9th Cir. 1991). The court held a typewritten name was not a substitute for a signature and absent a signature, the senior attorney could not be sanctioned under CR 11. *Giebelhaus*, at 965-66. These cases are not dispositive.

██ Under agency principles the associate's signature as agent makes the partner a principal responsible for satisfying the CR 11 requirements. The partner signed the motion to strike, his name alone, not the partnership's, was typed on the memorandum, and the associate's signature was apparently a matter of convenience. A filing signed by an authorized agent of an attorney should be treated as if the principal signed it for purposes of CR 11. *See Robinson v. Chicago*, 868 F.2d 959, 963 n.2 (7th Cir.), *cert. dismissed sub nom. Doulin v. Chicago*, 493 U.S. 1012 (1989), *cert. denied sub nom. Richardson v. Chicago*, 493 U.S. 1035 (1990); *Intra-Mar Shipping (Cuba) S.A. v. John S. Emery & Co.*, 11 F.R.D. 284, 286 (S.D.N.Y. 1951). As United States District Judge William W. Schwarzer stated in *Sanctions Under the New Federal Rule 11 — A Closer Look*, 104 F.R.D. 181, 185 (1985):

> The person signing the paper may not necessarily be the one responsible for it. An associate in a law firm charged with preparing a paper for filing may be carrying out the instructions of a partner who made the decision to file it. In such a situation, sanctions are more appropriately imposed on the principal rather than the agent carrying out his orders, and nothing in the rule bars its application in that manner.

The partner should be held solely liable.

Reversed and remanded for a new trial; the sanctions imposed are also reversed.

SHIELDS, C.J., and THOMPSON, J., concur.

Review denied at 122 Wn.2d 1019 (1993).