IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of: | No. 80041-8-I |
| Mark Jorstad, a vulnerable adult, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| Rita Jorstad, | |
| Appellant. | |

LEACH, J. — On May 15, 2019, the trial court entered a five year Vulnerable Adult Protection Order (VAPO) on behalf of Mark Jorsted against his wife Rita Jorsted.[1] Rita appeals. She asserts the trial court should not have imposed the VAPO and violated Canons 2.2, 2.3, and 2.6 of the Washington Code of Judicial Conduct (CJC). The record contains substantial evidence that Rita abused and neglected Mark. And, the record does not support Rita's assertions of judicial misconduct. So, we affirm.

BACKGROUND

Mark Jorsted suffers from Parkinson's disease, depression, and restricted mobility. Mark is bedridden and cannot speak in full sentences. Mark and Rita

---

[1] For clarity, Mark Jorstad, Rita Jorstad, Nikola Jorstad, and Richard Jorstad will be referred to by their first names.

Citations and pincites are based on the Westlaw online version of the cited material.

Jorstad have been married since 2011. Mark and Rita spent part of the year living in Phoenix, Arizona and the other part living in Des Moines, Washington. They each have children from previous relationships. Nikola Jorstad and Richard Jorstad are Mark's children.

In 2016, the couple separated for three months and Mark filed for divorce. Mark sought a protection order against Rita and the court granted it. But, Mark later terminated the protection order and the divorce proceedings.

On May 9, 2016, Mark was driving from Phoenix to Des Moines when California Highway Patrol pulled Mark over and detained him. Mark told the officer he was fleeing from Rita because she choked him and hit him at their condominium in Phoenix. On May 14, Mark told Des Moines police officers that Rita threatened to kill him. The officers identified Rita as the aggressor. But, the officers did not find probable cause to establish domestic violence had occurred.

On March 9, 2017, Mark suffered a pulmonary embolism.

In September 2017, Mark and Rita moved back to Phoenix. From September until June 2018, Mark depended on Rita and her family for his care. This included Rita's daughter, Shauna Dillon and son-in-law, Brad Dillon.

In June 2018, Mark and Rita drove from Phoenix to Des Moines. During a stop in Seaside, Oregon, Mark was transported to Providence Seaside Hospital for an evaluation. When Rita left the hospital room, Mark told hospital staff that Rita physically abused him and that he was afraid of her.

After Mark and Rita returned to Des Moines, Mark was admitted to St. Joseph's Hospital in Tacoma for further evaluations. Mark repeatedly told

hospital staff and Nikola that Rita physically abused him, that he did not want to have contact with Rita, and that he did not want Rita involved in his medical decisions. Hospital staff determined Mark was competent to make decisions and then helped Mark execute a revocation of his Durable Power of Attorney for Finances and Health Care. Mark changed his attorney in fact from Rita to Nikola with Richard as the alternate. Hospital staff also placed Mark on "confidential status," so that Rita could not find him. They also made a referral to the Washington State Department of Social and Health Services (DSHS), Adult Protection Services (APS).

APS had already received an intake form from Providence Seaside Hospital that identified Rita as the "alleged perpetrator" who abused or neglected Mark. On June 7, 2018, APS Investigator Debra Daniel interviewed Rita at the Des Moines condominium. Daniel read the APS intake narrative to Rita and explained that Rita was the "alleged perpetrator." Rita became very upset and ended the interview.

On June 18, 2018, APS dispatched Investigator Scott Kieser to interview Mark and conduct an "alleged victim interview" at the Des Moines condominium. With Rita present during the interview, Mark told Kieser that Rita was a "godsend" and was "not physically abusive."

In July 2018, Mark returned to St. Joseph's Hospital. On July 6, 2018, Daniel interviewed hospital staff and learned that Rita did not believe Mark had Parkinson's and that she had taken him off his Parkinson's medication. But, since being hospitalized, Mark had responded well to Parkinson's medication. On the same day, Rita called Mark but the hospital denied her call.

On August 24, 2018, Rita asked to visit Mark. Mark told hospital social workers that "he would rather his wife not visit him and stated that he doesn't want her here" and that he did not want to live with Rita. Dr. J. Daniel Wanwig found Mark to "exhibit decision making capacity."

On October 15, Rita filed a petition for a VAPO on behalf of Mark against Nikola. Rita sought "to compel Nikola Jorstad to immediately provide information about Mark Jorstad's location; allow Rita Jorstad access to Mark Jorstad's medical information and allow her to visit Mr. Jorstad without restriction; and compel an independent third-party medical evaluation of Mr. Jorstad."

On October 22, 2018, Daniel and the DSHS-APS filed a petition for a VAPO on behalf of Mark against Rita. On November 7, the trial court determined "that an emergency exists" and issued a temporary protection order. On November 19, Mark was discharged to an adult family home. The temporary protection order restrained Rita from going near or contacting Mark and excluded Rita from going within the hospital or the long-term care facility in which Mark resided. Due to Mark's medical condition, the trial court determined that an off-site VAPO hearing was necessary.

In March 2019, the trial court linked DSHS-APS's and Rita's cases. It also reissued and extended the temporary protection order.

Trial was held May 6 through May 9, 2019 and May 13, 2019. Daniel testified she was concerned that when Mark was under Rita's care, Rita would not provide him his prescribed Parkinson's medications. She testified that a form of neglect occurs when a caretaker contravenes a doctor's orders. Daniel also

testified that her concerns about Mark's decision making capacity caused her to request three or four hospital evaluations. When Daniel found Mark competent, he stated he did not want to see Rita nor have her as a part of his medical or financial decisions. He also said he wanted DSHS-APS to obtain a protection order against Rita.

On May 15, the trial court determined that Rita "represents a credible threat to the physical safety" to Mark. It found Mark to be a vulnerable adult under RCW 74.34.020 because of his age and his limited mental or physical abilities to care for himself. It also found Mark's account of Rita's violence, abuse, and his fear of her credible. It found Rita committed acts of abuse, improper restraint, and neglect. The trial court determined Mark should be protected and entered a five year VAPO against Rita expiring May 15, 2024. The trial court also denied and dismissed Rita's petition.

Rita appeals the VAPO.

ANALYSIS

Vulnerable Adult Protection Order

Rita challenges the sufficiency of the evidence to support the trial court findings of abuse, neglect, and improper use of restraints.[2]

---

[2] Rita also asserts the superior court erred in entering the VAPO before the APS investigation #340690 concluded. Because she does not support her argument by reference to the record or citation to authority, we do not consider it. RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

We review a trial court's decision to grant or deny a petition for a VAPO for abuse of discretion.[3] A trial court abuses its discretion when its exercise of discretion is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."[4] We review the record to determine whether substantial evidence supports challenged factual findings.[5]

Substantial evidence is that which is "sufficient to persuade a rational fair-minded person the premise is true."[6] "We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony."[7]

In most instances, "[t]he proper standard of proof involving abuse of a vulnerable adult under chapter 74.34 RCW is a preponderance of the evidence."[8] In Knight, we held that "the standard of proof for a vulnerable adult protection order contested by the alleged vulnerable adult is clear, cogent, and convincing evidence, as it is with a guardianship."[9] Here, Mark does not contest the VAPO. Instead, Rita attacks the credibility of the evidence and contends a preponderance of evidence does not support the trial court's finding that Mark was abandoned, abused, or neglected.

RCW 74.34.110(1) authorizes a trial court to issue a VAPO if it finds that a vulnerable adult requires protection from "abandonment, abuse, financial

---

[3] In re Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014).
[4] State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).
[5] Knight, 178 Wn. App. at 936.
[6] Sunnyside Valley Irr. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003).
[7] Knight, 178 Wn. App. at 937.
[8] Kraft v. Dep't of Soc. & Health Servs., 145 Wn. App. 708, 716, 187 P.3d 798 (2008).
[9] Knight, 178 Wn. App. at 940.

exploitation, or neglect, or the threat thereof." RCW 74.34.130 authorizes a trial court to order the relief it deems necessary to protect a vulnerable adult, such as entering restraining orders and prohibiting contact with the vulnerable adult.

The trial court found Mark "competently and credibly made statements" that Rita choked him, hit him, and tied him down. It also found that "Mark Jorstad has made clear his wishes that Rita Jorstad not have any contact with him, not have access to his medical records, and not make decisions for him." It found, by a preponderance of the evidence, that Rita presents a credible threat to Mark's physical safety. And, the trial court found it necessary to impose the VAPO in order to protect Mark from Rita.

The record contains substantial evidence that support these findings. In 2016, Mark told California Highway Patrol that he was fleeing Rita's abuse, and he told Des Moines police officers that Rita threatened to kill him. In 2018, at Providence Seaside Hospital, Mark waited until Rita left his hospital room to tell hospital staff that Rita physically abused him and that he was afraid of her. Then, Mark reported Rita's abuse to St. Joseph's Hospital staff. Doctors found Mark competent and credible, and hospital staff assisted him in changing his power of attorney from Rita to Nikola. Mark also told Daniel that he wanted a protection order against Rita.

Because substantial evidence support the trial court's finding that Rita committed acts of abuse, improper restraint, and neglect, we affirm the VAPO.

Code of Judicial Conduct

Rita asserts the trial court violated Canons 2.2, 2.3, and 2.6 of the Washington Code of Judicial Conduct (CJC). The CJC provides broad ethical statements called Canons, which "state overarching principles of judicial ethics that all judges must observe."[10] We presume judges perform their functions regularly and properly without bias or prejudice.[11]

CJC 2.2

Rita asserts the VAPO should be vacated under Court Rule 60(b) because the trial court favored the State in selecting a hearing date, overruling her counsel's objections, and discounting testimony and declarations in violation of CJC 2.2. Under CJC 2.2, "[a] judge shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially."

First, on Tuesday, May 7, the trial court asked the parties whether May 8 provided enough time to finish the trial. If May 8 did not provide the parties enough time, the trial court asked whether "everyone else and their witnesses [were] available Tuesday/Wednesday of next week?" Rita's counsel said that Rita was unavailable on Tuesday, May 14 because of work. The trial court responded, "If we are not available to finish tomorrow, we have to finish next week. So that means if people have to take off work to be here to finish this trial, that's what's going to have to happen." Then, Nikola's counsel said that Nikola was unavailable on Tuesday, May 14 during lunch. Finally, the trial court stated, "If we don't finish

---

[10] CJC Scope [2].
[11] State v. Leon, 133 Wn. App. 810, 813, 138 P.3d 159 (2006) (citing Jones v. Halvorson-Berg, 69 Wn. App. 117, 127, 847 P.2d 945 (1993).

tomorrow, is that people will make themselves available for next week." The trial ended on Monday, May 13 and the court issued the VAPO on Wednesday, May 15. Because the court did not convene on May 14, the day Rita was working, Rita's argument that the trial court favored the State in selecting a hearing date is without merit.

Second, the trial court admitted Exhibit 7 over the objection of Rita's counsel. Rita's counsel objected on the grounds of timeliness. The trial court heard each party's reasoning before admitting the exhibit as rebuttal. Rita fails to demonstrate unfairness or partiality.

Third, before entering the VAPO, the trial court stated, "This Court, having listened carefully to everyone's testimony over the last four days, read through all of the materials that were submitted, taken into consideration the law, has now made a decision." Rita's assertion that the trial court discounted testimony and declarations is without merit.

<u>CJC 2.3</u>

Rita contends the trial court violated CJC 2.3(A) through CJC 2.3(C) by displaying and allowing lawyers and witnesses to display bias and prejudice against her during trial. Because Rita does not support these assertions by reference to the record, we do not consider them.[12]

<u>CJC 2.6</u>

Rita contends the trial court violated CJC 2.6 by not permitting Mark to testify and not permitting Brad Dillon to testify on rebuttal. Under CJC 2.6(A), "A

---

[12] RAP 10.3(a)(6); <u>Cowiche Canyon Conservancy</u>, 118 Wn.2d at 809.

judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law."

On November 7, 2018, the trial court held an ex parte hearing. The court imposed a temporary protection order in which it noted, "Jorstad is hospitalized and having difficulty communicating with the court via FaceTime." But, Rita did not call Mark to testify at trial. And, Mark told Daniel that he did not want to be present at court.

The trial court denied Rita's request to call Brad Dillon on rebuttal because her counsel advised the court that his testimony was being offered to rebut DSHS's case in chief rather than support her own case against Nikola. The trial court correctly determined that Rita, as the respondent, did not have the right to call a rebuttal witness to rebut the petitioner's case. So, Rita's assertions are without merit.

## CONCLUSION

Substantial evidence supports the trial court's finding that Rita committed acts of abuse, improper restraint, and neglect against Mark. Rita fails to establish any violation of judicial ethics by the trial court. So, we affirm the VAPO.

Leach, J.

WE CONCUR:

Andrus, A.C.J.     Mann, C.J.