IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ARTHUR HYATT,<br><br>        Respondent,<br><br>        v.<br><br>MICHAEL A. OWENS; and ANGELO TSOUKALAS,<br><br>        Appellants. | No. 87907-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Michael Owens and Angelo Tsoukalas, representing themselves, seek reversal of the trial court's summary judgment order that quieted title in favor of Arthur Hyatt based on adverse possession and awarded attorney fees and costs to Hyatt. Because Owens and Tsoukalas failed to demonstrate a genuine issue of material fact as to the elements of adverse possession in the trial court or establish on appeal that the trial court otherwise erred, we affirm.

FACTS

Arthur Hyatt owns and resides at real property in Bellingham near the north shore of Lake Whatcom (Hyatt Property). Michael Owens owns the adjacent property to the east (Owens Property). Angelo Tsoukalas resides at and claims an interest in the Owens Property under an option to purchase agreement with Owens.

The Owens and Hyatt Properties were originally contained within a 23-acre parcel purchased by Harold and Edna Owens in 1947. The property is naturally divided into three sections by a creek that separates the westerly and middle sections from each other and a cliff that separates the middle and easterly portions from each other, becoming less steep as it extends northward. Harold and Edna Owens occupied the middle section, Harold's brother Ted Owens occupied the area west of the creek, and his other brother Louie Owens occupied the section east of the cliff.[1]



In March 1971, appellant Michael Owens obtained ownership of the easterly section by deed from his grandparents Harold and Edna. Correction deeds with differing legal descriptions were recorded in April 1971 and September 1978.

---

[1] Harold's brother's given names are Edward and Louis; however, they are also referred to as Ted and Louie in the record.

Owens subdivided the easterly section into three lots via the "Owens Short Plat," recorded in December 1978 based on the legal description in the 1978 correction deed. In 1983, Hyatt and his business partners purchased the remainder of the westerly and middle sections. The property was subdivided, and in 1984, Hyatt acquired title by deed to the parcel between the creek and the cliff and has resided there continuously ever since. Owens continues to own the westernmost lot, but he has not lived there since 1984.

Tsoukalas began residing at the Owens Property in 2011. In January 2018, a survey obtained by Tsoukalas showed that the cliff and its northern extension lay entirely within the legal boundary of the Owens Property. At issue in this case is the wedge-shaped strip of forested land located between the cliff and the legal description of the boundary line between the Owens and Hyatt Properties (Disputed Area).



EXHIBIT 3.17
DISPUTED AREA

Disputed Area

In March 2018, Hyatt, through counsel, filed a complaint against Owens and Tsoukalas seeking to quiet title to the Disputed Area based on adverse possession, mutual recognition and acquiescence, and other causes of action. Hyatt asserted that the parties have always observed the cliff and its northward extension as the true boundary between the properties. Hyatt further asserted that he has continuously used and occupied the Disputed Area from 1983 through the present, maintaining it in a manner consistent with the land's character in a manner that was open, notorious, actual, uninterrupted, and hostile for more than the ten-year statutory period. Hyatt sought an order to quiet title in his favor, an award of attorney fees and costs, and a permanent injunction to prohibit Tsoukalas from entering or using the Disputed Area.

Owens answered the complaint through counsel and Tsoukalas answered pro se. Neither defendant pleaded any counterclaims or cross claims. Over the next several years, the parties engaged in settlement discussions that proved fruitless. Counsel for Owens and Hyatt eventually withdrew, leaving all parties pro se.

In October 2024, Tsoukalas moved for a cease-and-desist order to prevent Hyatt from tampering with the boundary stakes and to order him to pay for their replacement. In November 2024, Tsoukalas moved for a cease-and-desist order to compel Hyatt to stop blocking him from entering the Disputed Area and to stop lighting fires in the Disputed Area.

Hyatt then moved for summary judgment. Hyatt argued that even if the Owens family intended the boundary line to be where it is described in the 1978

deed and as shown on the Owens Short Plat, such intent would not matter because he has adversely possessed the Disputed Area since 1983. In support of his motion, Hyatt submitted his own declaration that stated he has "continuously and *exclusively* maintained the Disputed Area (in a way that is consistent with its character as primarily forest land) since 1983." Hyatt explained that his uses within the Disputed Area include burn piles to dispose of woody debris, planting a grove of Douglas fir trees that "covers the entire width of the Disputed Area and is about 125 feet deep," planting other "non-harmful" trees, collecting firewood, storing materials, and mowing a 25-foot wide strip to maintain access to the property boundary "that is the entire width of the disputed area." Hyatt also stated that Owens' "actions through the years show he believed the Disputed Area was [Hyatt's] land," as Owens and his tenants "stayed completely out of the Disputed Area," "never maintained or used any part of the Cliff or west of there," willingly removed an old trailer from the Disputed Area at Hyatt's request, and asked Hyatt's permission to cut three big trees at the top of the cliff. Hyatt also submitted numerous photographs documenting his uses of the Disputed Area in support of his motion. In addition to the relief sought in his complaint, Hyatt asked the court to require the defendants to bear the cost of a updated survey and legal description.

Tsoukalas moved to dismiss on the ground that Hyatt had failed to respond to discovery and further sought to renote his previous motions and present video evidence at the summary judgment hearing. Tsoukalas then opposed Hyatt's motion for summary judgment and argued that the boundary plats and 2018 survey

were "in full agreement" as to the correct location of the boundary line and Hyatt's alleged use of the Disputed Area was unproven and insufficient to establish adverse possession. In support of his motion, Tsoukalas submitted a number of witness declarations. Daniel Gamble stated that in December 2024, Tsoukalas hired him to cut down a dead tree and Hyatt shouted at him while he was doing so. Tsoukalas' fiancée Beth Toberer stated that the litigation has "taken a toll on Angelo's health." David Tiller acknowledged that he had never walked on the property but stated that he viewed a video recorded by Tsoukalas in January 2018 in which the Disputed Area appears "completely overgrown" and Hyatt can be seen "ranting at the surveyors." Paul Olsen stated that he lived with his stepfather Ted Owens at the property west of the creek until 1961 and that he helped log the property during the 1960s. Olsen also described roads running through the properties and stated that his uncles "used these roads to visit each other as well as various projects." Tsoukalas also submitted several recent photographs of his own property and the boundary.

Hyatt and Tsoukalas appeared at the summary judgment hearing held on January 10, 2025. Owens did not appear at the hearing or otherwise respond. Hyatt affirmed that he had served Owens with his motion. The trial court began by denying Tsoukalas' pending motions. After hearing argument from Hyatt and Tsoukalas, the trial court granted summary judgment in favor of Hyatt and quieted title to the Disputed Area in his favor based on both adverse possession and mutual recognition and acquiescence. In so ruling, the trial court stated that Tsoukalas' evidence of recent activity was "irrelevant" because Hyatt established

ownership of the Disputed Area by adverse possession "long before Mr. Tsoukalas ever came on to the scene." The trial court also awarded Hyatt attorney fees and costs incurred in the matter from both Owens and Tsoukalas jointly and severally under RCW 7.28.083(3) in an amount to be determined. The court declined to order Tsoukalas to bear the cost of a survey and legal description and indicated that it would "write in the order that the boundary line between the two properties as described in the complaint is the cliff." The trial court also declined to issue a permanent injunction barring Tsoukalas from entering the Disputed Area "because [it did not] think that was requested."

Hyatt noted a motion for entry of judgment on an award of attorney fees and costs totaling $28,760.29 and supported his request with affidavits from counsel. Tsoukalas filed a response and argued that Hyatt should compensate both defendants for property taxes paid since 1984, Owens did not receive notice of the summary judgment hearing, Hyatt lacks credibility and failed to meet his burden to establish adverse possession, and Tsoukalas is not liable for Hyatt's attorney fees as per his property contract with Owens. Owens also filed a response that asserted he was not notified of the summary judgment hearing, disputed Hyatt's factual assertions regarding adverse possession, and argued he should not have to pay attorney fees because they are "excessive" and because he is "not personally a part of the disagreement of the disputed area that is occurring between Tsoukalas and Hyatt."

Hyatt, Tsoukalas, and Owens appeared at the presentation hearing on February 21, 2025. The court stated, "[T]he only thing to determine today is

- 7 -

whether the amount of attorney's fees that are being requested are reasonable" and entered judgment awarding Hyatt's attorney fees and costs in the amount requested.

Tsoukalas and Owens each timely appealed.

ANALYSIS

I.      Summary Judgment

We review summary judgment orders de novo and construe all evidence and reasonable inferences in favor of the nonmoving party.  *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).  Summary judgment is appropriate when the record shows "no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  CR 56(c).  "A 'material fact' is one on which the outcome of the litigation depends."  *TracFone, Inc. v. City of Renton*, 30 Wn. App. 2d 870, 875, 547 P.3d 902 (quoting *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977)), *review denied*, 3 Wn.3d 1030 (2024).

"Washington courts employ a two-step burden-shifting analysis" to evaluate summary judgment motions.  *Id.*  First, the moving party "bears the initial burden of showing that there is no genuine issue of material fact."  *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) *(*citing *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989)).  Second, if that initial burden is met, "[t]he burden then shifts to the nonmoving party to present evidence that an issue of material fact remains."  *Id.*  "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact.  *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 744, 87 P.3d

774 (2004). Summary judgment is appropriate if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

As a preliminary matter, we observe that Owens and Tsoukalas appeal pro se. While we acknowledge the difficulties of self-representation, "'the law does not distinguish between one who elects to conduct [their] own legal affairs and one who seeks assistance of counsel—both are subject to the same procedural and substantive laws.'" *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (quoting *In re Marriage of Wherley*, 34 Wn. App. 344, 349, 661 P.2d 155 (1983)).[2] We need not consider arguments that a party does not support with references to the record, meaningful analysis, or citation to pertinent authority. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

II.     Adverse Possession

Tsoukalas and Owens argue that Hyatt failed to meet his burden to establish adverse possession.[3] We disagree.

"Adverse possession requires 10 years of possession that is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile." *Herrin v.*

---

[2] Hyatt argues that the appellants' failure to assign error precludes our review. *See Emmerson v. Weilep*, 126 Wn. App. 930, 939-40, 110 P.3d 214 (2005) (failure to assign error or provide argument and citations to authority required by RAP 10.3(a) precludes consideration of alleged error). However, we may consider a party's argument where the briefing makes the nature of the challenge reasonably clear, there is no prejudice to the opposing party, and the court has not been greatly inconvenienced. *In re Dependency of H.W.*, 34 Wn. App. 2d 819, 827-28, 572 P.3d 481 (2025); RAP 1.2(a). Applying these principles, we exercise our discretion to reach the merits of the appellants' arguments.

[3] Neither appellant challenges the trial court's ruling that Hyatt also established ownership of the Disputed Area via mutual recognition and acquiescence.

*O'Hern*, 168 Wn. App. 305, 310-11, 275 P.3d 1231 (2012). "Title vests automatically in the adverse possessor if all the elements are fulfilled throughout the statutory period." *Gorman v. City of Woodinville*, 175 Wn.2d 68, 72, 283 P.3d 1082 (2012). "The party claiming adverse possession must establish each element by a preponderance of the evidence." *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010).

Here, Hyatt presented undisputed evidence establishing the elements of adverse possession. "'A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought [they] owned it.'" *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 89, 173 P.3d 959 (2007) (quoting *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001)). The "hostility" element does not require "personal animosity or adversarial intent" but, rather, use of the property "akin to that of an owner." *Herrin*, 168 Wn. App. at 311.

Hyatt attested that he has "continuously and *exclusively* maintained the Disputed Area (in a way that is consistent with its character as primarily forest land) since 1983" by planting trees, burning woody debris, cutting firewood, mowing to maintain access, and using it as storage. He further attested that Owens and his tenants prior to Tsoukalas always observed the cliff as the boundary line and behaved accordingly. Thus, Hyatt's rights in the Disputed Area vested by 1994, long before Tsoukalas moved to the Owens Property in 2011. Tsoukalas

- 10 -

presented no evidence regarding the use of the Disputed Area during the relevant time period, so he did not establish the existence of a question of material fact.

Tsoukalas argues that the trial court erred when it disallowed the January 29, 2018 video showing the Disputed Area. He contends that this video, along with his witness declarations and photographs, prove that Hyatt's "questionable" use of the Disputed Area "did not exist." "We review de novo all trial court rulings in summary judgment proceedings, including regarding the admissibility of evidence." *Asphy v. State*, 31 Wn. App. 2d 605, 614, 552 P.3d 325, *review denied*, 3 Wn.3d 1033 (2024). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "Evidence which is not relevant is not admissible." ER 402. The 2018 video had no bearing on Hyatt's use of the property prior to Tsoukalas' arrival in 2011, years after Hyatt's rights to the property vested by adverse possession, so the trial court did not err when it excluded it.

Tsoukalas also argues that Hyatt's declaration and exhibits do not show use and upkeep of the Disputed Area since 1983. He describes the Disputed Area as a "big green jungle" that lacks buildings or structures, unlike the rest of Hyatt's property. However, "[w]hat constitutes possession or occupancy of property for purposes of adverse possession necessarily depends upon the nature, character, and locality of the property involved and the uses to which it is ordinarily adapted or applied." *Anderson v. Hudak*, 80 Wn. App. 398, 403, 907 P.2d 305 (1995).

Although Hyatt maintained the area in a natural state, his use was sufficient to establish adverse possession.

Tsoukalas contends that Hyatt's factual assertions should be rejected because he repeatedly perjured himself and, thus, is not credible. But "[a]n issue of credibility is present only if the party opposing the summary judgment motion comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue," thereby creating an issue for trial. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991). Tsoukalas did not do so. His efforts to characterize Hyatt as broadly dishonest do not give rise to a credibility issue regarding any particular material fact.[4]

Tsoukalas also contends that even if Hyatt met the elements of adverse possession at some time in the past, the present condition of the Disputed Area shows that he abandoned that use. He is incorrect. "When a person adversely possesses real property for 10 years, such possession ripens into an original title." *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 50, 271 P.3d 973 (2012). Once the 10-year period is complete and title has vested, the property owner's rights are no longer dependent on continued adverse use. *See Gorman*, 175 Wn.2d at 73 ("Title acquired through adverse possession cannot be divested by acts other than those required to transfer a title acquired by deed.") Hyatt obtained title to the Disputed Area by adverse possession no later than 1994, so abandonment or cessation of use after that date would not extinguish his title.

---

[4] The trial court found Hyatt credible, but such "'findings of fact are superfluous in summary judgment proceedings and carry no weight on appeal.'" *TracFone*, 30 Wn. App. 2d at 876 (quoting *Hamilton v. Huggins*, 70 Wn. App. 842, 848, 855 P.2d 1216 (1993)).

Next, Tsoukalas asserts that the doctrine of laches bars Hyatt's claim because he was aware of his cause of action decades ago yet waited until 2018 to file his complaint. The equitable doctrine of laches arises from "knowledge of existing conditions and acquiescence in them." *Felida Neighborhood Assoc. v. Clark County*, 81 Wn. App. 155, 162, 913 P.2d 823 (1996). "Laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay." *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 241, 88 P.3d 375 (2004). However, because title vests upon satisfaction of the adverse possession requirements rather than the filing of the quiet title action, laches generally cannot bar a claim based solely on delay of filing suit after the adverse possession period has run. *See El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 855, 376 P.2d 528 (1962) ("When real property has been held by adverse possession for 10 years, such possession ripens into an original title."); *Nickell*, 167 Wn. App. at 51 (plaintiff may bring adverse possession action "any time after" they have "held possession adversely for 10 years"). Laches does not bar Hyatt's adverse possession claim.

Finally, Owens asserts that Hyatt's claim that the parties agreed the cliff was the true boundary is false. He asks us to consider his appellate brief as a "declaration." But under RAP 9.12, our review of an order granting summary judgment is limited to the "evidence and issues called to the attention of the trial court." Because Owens did not respond or appear at the summary judgment hearing, Owens' assertions were never "called to the attention of the trial court." Accordingly, we will not consider them now. To allow otherwise "would be to

undermine the rule that an appellate court is to engage in the same inquiry as the trial court in reviewing an order of summary judgment." *Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt*, 121 Wn.2d 152, 163, 849 P.2d 1201 (1993).

Still, Owens insists that his due process rights were violated because Hyatt failed to notify him of the summary judgment hearing. But the record contains a certificate of mailing, declaration of service, and declaration of confirmation of service showing that Hyatt properly served Owens at his address of record by priority mail. In any event, the proper vehicle for such a challenge would have been a CR 60(b) motion to vacate the summary judgment order. *See* CR 60(b)(1) ("On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for . . . [m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order."). Because the record does not demonstrate that Owens pursued this remedy in the trial court prior to the attorney fee hearing, we need not consider it further. *See* RAP 2.5(a).

III.    Boundary Line

Tsoukalas also argues that the trial court "contradicted itself" by defining the Disputed Area as "that area approximately located between the legally described/surveyed westerly boundary of the Owens Short Plat, and the line formed by the crest of the 40-foot cliff, and the northwesterly extension of that cliff line, as depicted on Exhibit 3.17 to the Verified Complaint." He insists that Exhibit 3.17 "does not represent the crooked cliff" and this "imaginary line" is "totally

- 14 -

unacceptable in surveying." However, it is well settled that natural geographical features control over technical measurements when conflicts arise. *See Camping Comm'n of Pac. Nw. Conf. of Methodist Church v. Ocean View Land, Inc.*, 70 Wn.2d 12, 15, 421 P.2d 1021 (1966) ("[T]he rule is that courses and distances must yield to natural and ascertained objects" in determining boundary of described property). The trial court's legal description is sufficiently clear.

IV.     Attorney Fees

A.     Award of Attorney Fees in Trial Court

Tsoukalas and Owens challenge the trial court's attorney fee award. "The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity." *Durland v. San Juan County*, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). Whether a trial court is authorized to award attorney fees is a question of law, which we review de novo. *Falcon Props., LLC v. Bowfits 1308, LLC,* 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). "When attorney fees are authorized, we will uphold an attorney fee award unless we find the trial court manifestly abused its discretion." *Workman v. Klinkenberg*, 6 Wn. App. 2d 291, 305, 430 P.3d 716 (2018). "The trial court abuses its discretion when its exercise of discretion is manifestly unreasonable or based on untenable grounds or untenable reasons." *Sw. Suburban Sewer Dist. v. Fish*, 17 Wn. App. 2d 833, 838, 488 P.3d 839 (2021).

Critically here, the notice of appeal did not designate the judgment on award of attorney fees and costs for our review. *See* RAP 5.3(a)(3) (requiring notice of appeal "designate the decision or part of decision which the party wants

reviewed"). "The scope of a given appeal is determined by the notice of appeal, the assignments of error, and the substantive argumentation of the parties." *Clark County v. W. Wash. Growth Mgmt. Hr'gs Rev. Bd.*, 177 Wn.2d 136, 144, 298 P.3d 704 (2013)). The appellants assert that the fee award was excessive, but their arguments in briefing do not challenge the trial court's *reasonableness determination* as to the amount awarded. Thus, the *propriety* of the award is the only matter at issue in this appeal. RCW 7.28.083(3) authorizes the trial court to award reasonable attorney fees and costs to the prevailing party in an adverse possession action "if, after considering all the facts, the court determines such an award is equitable and just." Hyatt prevailed on his adverse possession claim, so the trial court had statutory authority to award fees and costs to Hyatt.

Relying primarily on the option to purchase contract between the parties, Tsoukalas and Owens each argue that the other should be responsible for paying the fee award. RCW 7.28.083(3) is silent on apportionment among multiple defendants, leaving courts with discretion to determine how to allocate fee awards when multiple parties are involved. *See In re Marriage of Wixom*, 190 Wn. App. 719, 728, 360 P.3d 960 (2015) ("Courts may order parties and their attorneys to be jointly and severally liable for attorney fees."). The record establishes that the trial court considered whether both parties contributed to the need for litigation when it ordered joint and several liability. Any contractual dispute between Owens and Tsoukalas is outside the scope of this appeal.

Tsoukalas contends that the trial court inappropriately favored Hyatt by awarding his attorney fees without requiring Hyatt to compensate both Owens and

Tsoukalas for property taxes paid on the Disputed Area since 1983. Under RCW 7.28.083(1)(a), "[a] party who prevails against the holder of record title," or subsequent purchaser in an adverse possession action, may be required to "[r]eimburse such holder or purchaser for part or all of any taxes or assessments levied on the real property during the period the prevailing party was in possession of the real property in question and which are proven by competent evidence to have been paid by such holder or purchaser." Nonetheless, this claim also fails. It is undisputed that Tsoukalas did not pay property taxes, so he is not entitled to seek reimbursement. Moreover, as the trial court correctly noted, the defendants raised this matter for the first time in response to Hyatt's motion for an award of attorney fees and costs, so the court did not err when it declined to consider it. We presume judges perform their functions without bias or prejudice. *Jones v. Halvorson-Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993). Accordingly, Tsoukalas has failed to demonstrate that the trial court judge favored any party over others.

B.      Attorney Fees on Appeal

Tsoukalas seeks an award of fees on appeal and specifically asserts that he should be compensated for "legal advice" and "payment for all the hours [he has] invested defending from Hyatt." However, Tsoukalas is not the prevailing party on appeal, so he is not entitled to fees. In any event, attorney fees are not available to pro se litigants for their work representing themselves. *See In re Marriage of Brown*, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011).

V.      Other Requests for Relief

Tsoukalas argues that the trial court erred when it "disregarded" Hyatt's bad behavior towards him, including his removal of boundary stakes, lighting fires during a burn ban, and attempting to block Tsoukalas from entering the Disputed Area.   But the trial court correctly noted that Tsoukalas did not plead any counterclaims or cross claims, so it appropriately denied Tsoukalas' requests for relief regarding matters outside the complaint.  *See* CR 13 (providing for pleading of counterclaims and cross claims).  Tsoukalas also requests that the trial court judge recuse herself from other lawsuits involving him, but such a request falls well outside the scope of appeal and is not properly before us.

Hyatt asks this court to order Owens to pay for a survey of the cliff.  But the trial court declined to order this relief and specifically noted that a survey is unnecessary because the cliff is the boundary.  Because Hyatt does not argue that the court erred when it so ruled, we decline his request.

Hyatt also asks this court to bar Tsoukalas from his property, including the Disputed Area.  Although Hyatt sought this relief in his complaint and in his motion for summary judgment, he failed to cross-appeal the trial court's denial of his requests and we decline to reach the issue.

Affirmed.

WE CONCUR:

_____

_____

Birk, J.

Chung, J.