244 P.3d 959 (2010)
In re Personal Restraint Petition of Steven Daniel SWENSON, Petitioner.
No. 63565-4-I.
Court of Appeals of Washington, Division 1.
December 6, 2010.
*960 Sheryl Gordon McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, WA, for Petitioner.
Ann Summers, King County Prosecutor's Office, Seattle, WA, for Respondent.
SCHINDLER, J.
¶ 1 Steven D. Swenson filed a personal restraint petition (PRP) for resentencing before a different judge on his convictions of two counts of rape of a child in the first degree, two counts of communication with a minor for immoral purposes, and one count of sexual exploitation of a minor. While Swenson concedes he did not ask the judge to recuse, he claims the appearance of fairness doctrine, the Code of Judicial Conduct (CJC) Canon 3(D)(1), and his due process rights were violated because the sentencing judge was one of the prosecutors involved in an unrelated juvenile adjudication approximately 20 years earlier. Because Swenson cannot show prejudicial error or a complete miscarriage of justice, we deny his petition.
¶ 2 In December 2007, the State charged 35-year-old Steven D. Swenson with rape of a child in the first degree of 6-year-old N.M., count I; rape of a child in the first degree of 4-year-old K.M., count II; child molestation in the first degree of K.M., count III; communication with N.M. and 10-year-old A.M. for immoral purposes, count IV and count VI; and sexual exploitation of N.M., count V.
¶ 3 Swenson pleaded guilty to an amended information charging him with rape of a child in the first degree, count I and count II; communication with a minor for immoral purposes, count IV and count VI; and sexual exploitation of a minor, count V. In the "Felony Plea Agreement," Swenson agreed to the facts as set forth in the certification for probable cause and the police reports. Swenson also agreed that the charges constituted separate and distinct acts that did not encompass the same criminal conduct. The State agreed to dismiss child molestation in the first degree, count III, and file no further charges based on evidence seized from Swenson's computers.
*961 ¶ 4 In the "Statement of Defendant on Plea of Guilty to Felony Sex Offense," Swenson admits:
I had anal intercourse with N.M. ... I had anal intercourse with K.M. ... I did knowingly videotape and photograph myself engaging in sexually explicit conduct with N.M.
In his "Statement of Defendant on Plea of Guilty (Misdemeanor)" for two counts of communicating with a minor, Swenson admits:
I did communicate with N.M. and A.M. ... for an immoral purpose of a sexual nature by playing "strip blackjack" with them.
¶ 5 The "Prosecutor's Understanding of Defendant's Criminal History (Sentencing Reform Act)," that is attached as an appendix to the plea agreement, shows Swenson has no prior criminal history as an adult, but that Swenson was convicted as a juvenile in 1986 of unlawful imprisonment and assault.
¶ 6 With an offender score of 6, the minimum sentence range for rape of a child is 162 to 216 months with a maximum of life. The prosecutor's "Sentencing Recommendation" form states that the parties agreed to recommend a minimum term of 216 months and a maximum of life for rape of a child in the first degree, count I and count II; 102 months for sexual exploitation of a minor, count V; and 12 months for the two gross misdemeanor crimes of communicating with a minor for immoral purposes, count IV and count VI, to be served concurrently to the sentence for rape of a child.[1]
¶ 7 The Statement of Defendant on Plea of Guilty to Felony Sex Offense also reflects the parties' agreement to recommend that the judge sentence Swenson to a concurrent 216-month term of confinement on the two counts of rape of a child in the first degree, sexual exploitation of a minor, and the two counts of communicating with a minor for immoral purposes.
¶ 8 The plea hearing took place on April 1, 2008 before the Honorable Jim Rogers. Following a plea colloquy with Swenson, the court found that he knowingly, intelligently, and voluntarily entered into the plea.
¶ 9 The sentencing was scheduled before the Honorable Nicole MacInnes. Following a continuance, the sentencing took place on May 30. The sentencing court followed the agreed recommendation and sentenced Swenson to a minimum term of 216 months and a maximum term of life for the two counts of rape of a child in the first degree with the sentence imposed on the other counts to be served concurrently.[2] Swenson did not appeal.
¶ 10 On May 28, 2009, Swenson filed a PRP claiming for the first time that the appearance of fairness doctrine, CJC Canon 3(D)(1), and his right to due process were violated because the sentencing judge was a prosecutor in a prior juvenile adjudication against him 20 years earlier. In support, Swenson submitted documentation showing that the sentencing judge was one of the prosecutors involved in a juvenile adjudication against Swenson in 1986.
¶ 11 In May, 1986, the State charged Swenson in juvenile court with one count of unlawful imprisonment and one count of simple assault. The information alleged that Swenson restrained three minors and assaulted two of them. King County Deputy Prosecuting Attorney David Vogel signed the information on behalf of the State. In June, Deputy Prosecuting Attorney Linda Walton signed an order agreeing to waive arraignment. In July, Senior Deputy Prosecuting Attorney Nicole MacInnes filed a motion to amend the information to charge Swenson with assault in the second degree instead of simple assault.
¶ 12 In August, Deputy Prosecuting Attorney Jon Love issued subpoenas for witnesses to appear at the adjudication scheduled in October. At the request of the parties, the *962 court agreed to continue the adjudication until November. In November, the court scheduled a plea and disposition hearing for February, 1987. Senior Deputy Prosecuting Attorney MacInnes signed the order on behalf of the State scheduling the plea and disposition hearing. In December, Senior Deputy Prosecuting Attorney MacInnes filed a motion to amend the information to change the charge of assault in the second degree to simple assault.
¶ 13 Deputy Prosecuting Attorney Karen Willie represented the State at the plea and disposition hearing on February 11, 1987. Swenson entered an Alford[3] plea to one count of unlawful imprisonment and two counts of simple assault as charged in the amended information. The court imposed a disposition of 9 months of community supervision, 24 hours of community service, and a psychological evaluation.
¶ 14 In his PRP, Swenson seeks a resentencing before a different judge. Swenson asserts the sentencing judge violated the appearance of fairness doctrine, the CJC Canon 3(D)(1), and his right to due process because the judge was one of the prosecutors in an unrelated juvenile adjudication more than 20 years earlier.
¶ 15 To obtain relief in a PRP, the defendant must show actual substantial prejudice based on constitutional error, or a fundamental error of law that results in a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990). As the petitioner in a PRP, Swenson bears the burden of establishing prejudicial error. In re Pers. Restraint of Lord, 152 Wash.2d 182, 188, 94 P.3d 952 (2004).
¶ 16 Criminal defendants have a due process right to a fair trial by an impartial judge. WASH. CONST. art. I, § 22; U.S. CONST. amends. VI, XIV. Impartial means the absence of actual or apparent bias. State v. Moreno, 147 Wash.2d 500, 507, 58 P.3d 265 (2002). "The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.'" State v. Post, 118 Wash.2d 596, 618, 826 P.2d 172, 837 P.2d 599 (1992) (quoting State v. Madry, 8 Wash.App. 61, 70, 504 P.2d 1156 (1972)). We presume that a judge acts without bias or prejudice. Jones v. Halvorson-Berg, 69 Wash.App. 117, 127, 847 P.2d 945 (1993).
¶ 17 CJC Canon 3(D)(1) and the appearance of fairness doctrine require a judge to disqualify himself from a proceeding if the judge is biased against a party, or the judge's impartiality may reasonably be questioned. State v. Dominguez, 81 Wash.App. 325, 328, 914 P.2d 141 (1996). CJC Canon 3(D)(1) states that "[j]udges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned." The appearance of fairness doctrine is "directed at the evil of a biased or potentially interested judge or quasi-judicial decisionmaker." Post, 118 Wash.2d at 618-19, 826 P.2d 172, 837 P.2d 599.
¶ 18 The test for determining whether a judge should disqualify where the judge's impartiality might reasonably be questioned is an objective one. State v. Leon, 133 Wash.App. 810, 812, 138 P.3d 159 (2006). A court must determine "whether a reasonably prudent and disinterested observer would conclude [the defendant] obtained a fair, impartial, and neutral [hearing]." Dominguez, 81 Wash.App. at 330, 914 P.2d 141. However, "[w]ithout evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit." Post, 118 Wash.2d at 619, 826 P.2d 172, 837 P.2d 599. Further, a defendant who has reason to believe that a judge should be disqualified must act promptly to request recusal and "cannot wait until he has received an adverse ruling and then move for disqualification." State v. Carlson, 66 Wash. App. 909, 917, 833 P.2d 463 (1992).
¶ 19 We reject Swenson's assertion that no Washington case addresses the question of "whether a former prosecutor can sit as a judge on a case involving a criminal defendant whom he or she previously prosecuted." Dominguez squarely addresses this question.
¶ 20 In Dominguez, the judge previously represented the defendant in a criminal proceeding *963 and later prosecuted the defendant in another case. Dominguez, 81 Wash.App. at 327, 914 P.2d 141. The judge denied the defendant's motion to recuse. The judge said that he remembered little about the defendant and knew nothing about the present case. Dominguez, 81 Wash.App. at 327, 914 P.2d 141. On appeal, we concluded that the fact the judge had acted as an attorney for the defendant and against the defendant in unrelated cases did not establish potential or actual bias. Dominguez, 81 Wash.App. at 329, 914 P.2d 141. The Dominguez court held that evidence that a judge "worked as a lawyer for or against a party in a previous, unrelated case," without a specific showing of bias, is not sufficient to establish grounds for disqualification under the appearance of fairness doctrine, CJC Canon 3(D)(1), or due process. Dominguez, 81 Wash.App. at 328-29, 914 P.2d 141.
¶ 21 Following the majority rule, we also held there were no grounds for disqualification under CJC Canon 3(D)(1) because "disqualification is required when a judge has participated as a lawyer in the case being adjudicated; however, unless there is a specific showing of bias, a judge is not disqualified merely because he or she worked as a lawyer for or against a party in a previous, unrelated case." Dominguez, 81 Wash.App. at 329, 914 P.2d 141 (citing Mustafoski v. State, 867 P.2d 824, 832 (Alaska Ct.App.1994) ("[T]he prevalent American rule of disqualification is limited to instances in which the judge participated as a lawyer in an earlier stage of the same case."); Commonwealth v. Darush, 279 Pa.Super. 140, 420 A.2d 1071, 1074 (1980) ("The cases in other jurisdictions are in accord that the fact that the trial judge prosecuted the defendant for other offenses while he was district attorney is not, in and of itself, ground for disqualification.")).[4]
¶ 22 Here, there is no dispute that Swenson did not ask the sentencing judge to recuse. As in Dominguez, without a specific showing of actual or potential bias, Swenson cannot establish a violation of the appearance of fairness doctrine or CJC Canon 3(D)(1).
¶ 23 Moreover, there is no basis to reasonably question whether Swenson received a fair, impartial, and neutral hearing. The record shows the judge followed the parties' agreed sentencing recommendation and the sentencing hearing was fair and impartial. And nothing in the record indicates that the sentencing judge was aware of her involvement as a prosecutor 20 years earlier in an unrelated juvenile case against Swenson.
¶ 24 Nonetheless, Swenson contends that the judge's impartiality might reasonably be questioned because the minimum sentence was at the high end of the standard range and the judge did not have to follow the agreed sentencing recommendation. In support, Swenson argues that the rationale in State v. Chamberlin, 161 Wash.2d 30, 162 P.3d 389 (2007) supports resentencing in front of another judge. We conclude neither the facts nor the rationale in Chamberlin support Swenson's argument that an adversarial relationship in a case approximately 20 years earlier disqualifies a judge from sitting on an unrelated case.
¶ 25 In Chamberlin, the court considered whether a judge can issue a search warrant and then later rule on a motion to suppress evidence obtained as a result of the warrant. Chamberlin, 161 Wash.2d at 35-36, 162 P.3d 389. The court concluded that because no inherent prejudice or bias resulted from doing so, the judge was not required to disqualify himself. Chamberlin, 161 Wash.2d at 39-40, 162 P.3d 389. In reaching that conclusion, the court distinguished In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955), where the judge, acting as the only member of a secret grand jury proceeding and as the "investigator, sole juror, and charging authority," tried, convicted, and sentenced the defendants. Chamberlin, 161 Wash.2d at 39-40, 162 P.3d 389. The court reasoned that unlike in Murchison, the role *964 of issuing a search warrant based solely on independent affidavits does not put the judge in an adversarial position. Chamberlin, 161 Wash.2d at 39-40, 162 P.3d 389. The court also noted other protections that guard against prejudice, including the right to appellate review, the right for a change of judge under RCW 4.12.050, and the requirement to recuse under CJC Canon 3(D)(1) when the judge's impartiality might reasonably be questioned. Chamberlin, 161 Wash.2d at 40-41, 162 P.3d 389.
¶ 26 Swenson also argues that under the Supreme Court's recent decision in Caperton v. A.T. Massey Coal Co., ___ U.S. ___, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (U.S.W.Va. 2009), his due process rights were violated.
¶ 27 In Caperton, a West Virginia justice refused to recuse himself from a case involving a $50 million damages award against a coal company whose chairman contributed $3 million to the campaign to elect that justice. The justice ruled in favor of the coal company in overturning the damages award. The Court held that under the "extreme facts" of the case, "the probability of actual bias rises to an unconstitutional level." Caperton, 129 S.Ct. at 2265. Noting that the West Virginia justice's rejection of the motion to recuse was based on his conclusion that there was no actual bias, the court did not question "his subjective findings of impartiality and propriety. Nor do we determine whether there was actual bias." Caperton, 129 S.Ct. at 2263. Nonetheless, the Court concluded:
[T]here is a serious risk of actual bias based on objective and reasonable perceptions when a person with a personal stake in a particular case had a significant and disproportionate influence in placing the judge on the case by raising funds or directing the judge's election campaign when the case was pending or imminent.
Caperton, 129 S.Ct. at 2263-64.
¶ 28 And in addressing those circumstances where there is no actual bias but rather the probability of bias, the Court adopted an objective test that "asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is `likely' to be neutral, or whether there is an unconstitutional `potential for bias'" that is "`too high to be constitutionally tolerable.'" Caperton, 129 S.Ct. at 2257, 2262 (quoting Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)).
¶ 29 But the Court emphasized that the due process clause establishes the "constitutional floor" in matters involving judicial disqualification. Caperton, 129 S.Ct. at 2267 (quoting Bracy v. Gramley, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997)). And that "[b]ecause the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will be resolved without resort to the Constitution. Application of the constitutional standard implicated in this case will thus be confined to rare instances." Caperton, 129 S.Ct. at 2267.
¶ 30 This case does not implicate any of the concerns addressed by the Court in Caperton. Swenson does not claim actual bias. Nor can he show the probability of bias based on the involvement of the sentencing judge 20 years earlier in an unrelated juvenile adjudication against him. The circumstances in this case do not come close to a due process violation under the standards set forth in Caperton.
¶ 31 Because Swenson has not demonstrated actual or substantial prejudicial error, or a complete miscarriage of justice, we deny his personal restraint petition.[5]
WE CONCUR: LEACH, A.C.J., and APPELWICK, J.
NOTES
[1] The standard range determinate sentence for the one count of sexual exploitation of a minor was 77 to 102 months. The standard range for the two counts of communication with a minor of immoral purposes, a gross misdemeanor, was 0 to 365 days. Swenson also agreed to a joint recommendation of a high end standard range sentence as to those offenses.
[2] The court also followed the agreed recommendation for the other offenses.
[3] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[4] In contrast, Swenson cites to a minority rule that bars a former prosecutor from sitting as a judge if he or she previously prosecuted the defendant. See Goines v. State, 708 So.2d 656 (Fla.Dist.Ct.App.1998); State v. Kettles, 345 N.J.Super. 466, 785 A.2d 925 (Ct.App. Div.2001); Penoyer v. State, 945 So.2d 586 (Fla.Dist.Ct.App. 2006). Swenson ignores our decision in Dominguez where we adopted the majority rule.
[5] Swenson relies In re Pers. Restraint of Richardson, 100 Wash.2d 669, 675 P.2d 209 (1983), overruled on other grounds in State v. Dhaliwal, 150 Wash.2d 559, 568, 79 P.3d 432 (2003), to also argue that violation of the appearance of fairness doctrine, CJC Canon 3(D)(1), and due process is a structural error that requires reversal without a showing of prejudice. In Richardson, our Supreme Court held that in order to establish a conflict of interest under the Sixth Amendment, the defendant must show an actual conflict of interest adversely affected his lawyer's performance. Richardson, 100 Wash.2d at 677, 675 P.2d 209. If the defendant meets this burden, prejudice is presumed. Richardson, 100 Wash.2d at 677, 675 P.2d 209. But here, Swenson cannot show actual bias on the part of the sentencing judge, a direct interest in the outcome, or a violation of due process. See Tumey v. State of Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (A mayor also served as a judge and had a "direct pecuniary interest in the outcome." Tumey, 273 U.S. at 535, 47 S.Ct. 437.); see also Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (Citing Tumey, 273 U.S. 510, 47 S.Ct. 437, "biased trial judge" as example of structural error regarding "automatic reversal." Johnson v. United States, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).); see also Johnson, 520 U.S. at 469, 117 S.Ct. 1544 (lack of an impartial judge).