IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of the  Personal Restraint of )
) No.  37983-3-III
AUSTIN RICHARD MOORES NELSON, )
)
Petitioner. ) UNPUBLISHED OPINION

STAAB, J. — On September 9, 2016, Austin Nelson pleaded guilty to first degree murder, first degree burglary, first degree animal cruelty, and second degree malicious mischief.  The parties agreed on the standard sentencing range, including firearm enhancements, but did not agree on a sentencing recommendation.  Ten months after sentencing, Mr. Nelson filed this personal restraint petition raising several arguments, including: (1) that the application of the firearms enhancement to his animal cruelty conviction was error, (2) the victim statements by persons employed in the court system created bias and violated his due process rights, (3) the court imposed an exceptional sentence without sufficient findings of fact or conclusions of law, (4) Mr. Nelson's sentencing range was miscalculated because several convictions should have been counted as "same criminal conduct," (5) his attorney's failure to object to these errors constitutes ineffective assistance of counsel, and (6) his plea was involuntary.

We agree that the firearm enhancement was incorrectly added to the animal cruelty conviction and remand for resentencing while rejecting the remainder of Mr. Nelson's issues.

FACTS

In September 2015, 19-year-old Austin Nelson was dating the 15-year-old daughter of Teresa Ryan. After Mrs. Ryan learned of the relationship, she spoke to Mr. Nelson and told him to stay away from her daughter. On January 15, 2016, after Mrs. Ryan's daughter ended their relationship, Mr. Nelson damaged her car. On January 17, 2016, Mr. Nelson posted a video on social media of himself and Mrs. Ryan's daughter having sex. On January 18, Mr. Nelson went to the home of Teresa and Brent Ryan and "with premeditated intent" shot and killed Teresa Ryan outside her home. After shooting Mrs. Ryan, Mr. Nelson entered the Ryan family home and intentionally shot and killed the family dog.

At the time she was killed, Mrs. Ryan was employed in the clerk's office at Pierce County District Court.

Mr. Nelson was appointed an attorney and the services of an investigator. In September 2016, Mr. Nelson pleaded guilty as charged without the benefit of an agreed recommendation. At the time of sentencing, the parties agreed that the standard range sentence for the first degree murder conviction was 281 to 374 months, with the remaining sentences running concurrently. The parties also agreed that a firearm

2

enhancement would apply to the convictions for murder, burglary, and animal cruelty and that these enhancements would run consecutive to the underlying sentences and each enhancement. According to his statement on plea of guilty, Mr. Nelson understood that the prosecuting attorney would recommend the maximum allowable in-custody standard range sentence of 512 total months.

At sentencing, the court reviewed Mr. Nelson's statement of defendant on plea of guilty. After accepting Mr. Nelson's plea, the court considered statements from the prosecutor, victims, and Mr. Nelson. The court noted that it had read 24 victim impact statements and heard oral statements from the victim's sister and co-worker at district court. The State recommended the maximum standard range as indicated in the statement on plea of guilty and asked the court to consider the victim impact statements stating "the defendant committed a premeditated murder, killing a woman whose only crime was to protect her daughter." Report of Proceedings (RP) at 18-19.

Mr. Nelson and his attorney argued for an exceptional sentence of 419 months, based on mental health issues and *Miller*'s[1] application to Mr. Nelson's youth. To ensure proportionality to other similarly situated defendants' sentences and to conform to the "Real Facts Doctrine," defense counsel asked the court to disregard the victim impact statements and the fact that the victim had worked in the Tacoma District Court Building.

---

[1] *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

*Id.* at 21. Defense counsel stressed that Mr. Nelson insisted on taking responsibility for his actions and was "eager to plead out to the original Information." *Id.* at 22. Even after the State added an extra charge, "He stepped up and pled as charged to everything." *Id.* Mr. Nelson personally repeated his goal to take full responsibility. *Id.* at 24-25.

> The trial court accepted Mr. Nelson's plea, stating:

> I don't know what the evidence is in this case. . . .

> I didn't know Ms. Ryan. I understand she worked in the District Court, worked in the same building. To my knowledge, I never met her. I didn't know her. The letters I read, she had a lot of people that cared an awful lot about her. You, in many ways, are a parent's worst nightmare and became her family and friends' worst nightmare. The involvement with the daughter, being told not to have a relationship and then basically wait for her and kill her, go into the house and end up killing the dog as well.

> I appreciate the materials [defense counsel] gave to me. I did read them.

Resp't Br. App. "E" at 25-26. The court's comments do not focus on the co-worker statements, and the record contains no indication that the judge knew any of the victim's co-workers. The court concluded that the high-end was appropriate, adopted the stipulated offender score information, and sentenced Mr. Nelson according to the State's recommendation of 512 months, calculated by adding 374 months from count 1 to the sentencing enhancements from counts 1, 2 and 3. *Id.* at 26-28; Resp't Br. App. "A" at 1-5.

On July 19, 2017, Mr. Nelson filed this pro se personal restraint petition (PRP). He later obtained a stay of the PRP and filed an untimely direct appeal on July 31, 2018, with a motion to enlarge time, arguing all of the identical issues asserted in this PRP.

4

*State v. Nelson*, No. 52228-4-II. His motion to stay the PRP was granted. Commissioner rulings August 27, 2018 and March 28, 2019. When Mr. Nelson failed to show extraordinary circumstances to enlarge time, the direct appeal was dismissed by Commissioner's Ruling on September 11, 2018. Subsequent motions to modify and for discretionary review were also denied. The mandate issued on July 18, 2019 and the stay of this PRP was lifted. Commissioner's Ruling August 5, 2019; RCW 10.73.090(3)(b).

Upon preliminary review, the court determined that a response was required by the State. RAP 16.8.1(d). The State responded, and Mr. Nelson replied. Upon initial consideration, the court determined that the petition was not frivolous, referred the matter to a panel for decision, and appointed counsel to file a supplemental brief. Commissioner's ruling January 10, 2018; RAP 16.11(b); RCW 10.73.150(4). Appointed counsel filed supplemental briefing, and the State responded.

PRP STANDARDS

Mr. Nelson is under restraint at the Walla Walla State Penitentiary pursuant to the convictions. His petition was timely filed ten months from sentencing. RCW 10.73.090(1). He has not filed prior petitions.

Our review of a collateral proceeding is different than our standard of reviewing a direct appeal. A personal restraint petition is not a substitute for an appeal. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 823-24, 650 P.2d 1103 (1982). To obtain relief in a personal restraint petition, the petitioner must show actual and substantial prejudice

5

resulted from alleged constitutional errors or for alleged non-constitutional errors a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). To avoid dismissal, the petitioner must support claims with facts and not merely bald or conclusory allegations. *Id*. at 813-14. The supporting evidence must be based on "more than speculation, conjecture, or inadmissible hearsay," and failure to meet this calls for dismissal of the petition. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). This court will dismiss a petition if it "fails to present an arguable basis for collateral relief either in law or in fact, given the constraints of the personal restraint petition vehicle." *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015).

A. FIREARM ENHANCEMENT

Mr. Nelson argues that his sentence is erroneous under *State v. Soto*, 177 Wn. App. 706, 714, 309 P.3d 596 (2013), which held that the firearm enhancement does not apply to an unranked felony. The State responds that we should revisit and reject the holding in *Soto*.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, provides a firearm enhancement to sentences for crimes committed when the offender was armed with a firearm. RCW 9.94A.533. The first section of this statute provides that "[t]he provisions of this section apply to the standard sentence ranges determined by RCW 9.94A.510 or

6

9.94A.517." RCW 9.94A.533(1). RCW 9.94A.510 is the "Table 1" sentencing grid.

RCW 9.94A.517 is the drug offense sentencing grid (inapplicable in this case).

The Table 1 sentencing grid calculates an offender's standard range using the individual's offender score and the offense's seriousness level. The offense of animal cruelty in the first degree is defined by RCW 16.52.205(1)-(3). It is a class C felony. RCW 16.52.205(4). Mr. Nelson was charged with animal cruelty by intentionally shooting and killing a dog, a violation of RCW 16.52.205(1). No seriousness level has been assigned to that means of committing first degree animal cruelty. RCW 9.94A.515. Therefore, a standard sentence range cannot be determined for that means of committing the offense from RCW 9.94A.510, the Table 1 sentencing grid. "Unranked offense" is the term commonly applied to offenses that have not been assigned a seriousness level and whose standard sentencing range cannot be determined on the Table 1 sentencing grid or the drug offense sentencing grid. Where no seriousness level has been assigned to an offense, the court determines the sentence by applying RCW 9.94A.505(2)(b).

In *Soto*, this court considered an identical application of the firearm enhancement to animal cruelty and determined the statute did not apply to unranked offenses. *State v. Soto*, 177 Wn. App. at 714-15. The court read RCW 9.94A.533(1), which explicitly incorporates the Table 1 grid, to be exclusive and complete, not ambiguous or subject to amendment by the court. *Id.* at 715. Thus, under the plain language of the statute,

unranked felonies are excluded from the enhancement. *Id*. We reconsidered the *Soto* case

in *State v. Vazquez*, 200 Wn. App. 220, 225, 402 P.3d 276 (2017) and upheld the decision.

In this case, we are abiding by our prior holdings in *Soto* and *Vazquez*. The State's

legislative intent and history arguments are the same arguments we rejected in *Soto* and

*Vazquez*. The legislature's codified declaration of intent cannot "'trump the plain

language of the statute.'" *See State v. Granath*, 190 Wn.2d 548, 556, 415 P.3d 1179

(2018) (quoting *State v. Reis*, 183 Wn.2d 197, 212, 351 P.3d 127 (2015)). Additionally,

we note that *Soto* was decided eight years ago. If the legislature intended a different

application, it would have amended the statute in response to *Soto*. *State v. Blake*, 197

Wn.2d 170, 190, 481 P.3d 521 (2021).[2]

Although Mr. Nelson has demonstrated error, because this is a collateral attack he

must show more than error; he must demonstrate a constitutional error or a fundamental

defect that inherently results in a complete miscarriage of justice. *State v. Buckman*, 190

Wn.2d 51, 61-62, 409 P.3d 193 (2018). Throughout his briefing, Mr. Nelson fails to

articulate whether he is alleging that the sentencing error is a constitutional error or a

fundamental defect. Instead, he argues that the error entitles him to withdraw his plea. In

---

[2] The legislature is presumed to be aware of judicial interpretation of its enactments and where statutory language remains unchanged after a court decision the court will not overrule clear precedent interpreting the same statutory language.

the alternative, he contends that he is entitled to resentencing. We will address these arguments in reverse order.

Our Supreme Court has already decided that the incorrect application of a firearm enhancement constitutes a fundamental defect. *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 694, 9 P.3d 206, 210 (2000). As Mr. Nelson points out, the prejudice resulting from this error was the additional 18 months added to his sentence. Having demonstrated a fundamental error and prejudice, Mr. Nelson is entitled to resentencing.

Notwithstanding this conclusion, Mr. Nelson argues that the error entitles him to withdraw his plea. While we agree that Mr. Nelson's plea was involuntary, he fails to demonstrate the prejudice necessary to withdraw his plea.

"Due process requires that a guilty plea may be accepted only upon a showing the accused understands the nature of the charge and enters the plea intelligently and voluntarily." *State v. A.N.J.*, 168 Wn.2d 91, 117, 225 P.3d 956 (2010). A plea is knowing and voluntary only when the person pleading guilty understands the plea's consequences, including possible sentencing consequences. *In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 594-95, 316 P.3d 1007 (2014). A guilty plea is involuntary when based on misinformation about the direct consequences of a plea. *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006). The application of a sentencing enhancement is a direct consequence of a plea because it directly impacts the defendant's range of punishment. *State v. Turley*, 149 Wn.2d 395, 399, 69 P.3d 338 (2003).

In this case, Mr. Nelson was misinformed of the sentencing consequences of his plea. He was told that his sentence would be increased by 18 months for a firearm enhancement incorrectly applied to an unranked felony. Thus, Mr. Nelson's plea was involuntary. *See Buckman*, 190 Wn.2d at 59-60.

Because this is a collateral attack, however, the conclusion that his plea was involuntary does not end the analysis. Instead, Mr. Nelson must also show actual and substantial prejudice. In *Buckman*, the juvenile defendant was incorrectly advised that he was facing a maximum penalty of life in prison with the possibility of lifetime community custody. On collateral review, the court found this misinformation sufficient to render the defendant's plea involuntary. *Id*. at 59-60. Nonetheless, while *Buckman* was entitled to resentencing, he failed to establish prejudice sufficient to set aside his plea. *Id*. at 60-61. "On collateral review, when the claimed error is 'a misstatement of sentencing consequences,' we require the petitioner to show 'actual and substantial prejudice.'" *Id*. at 60 (quoting *Stockwell*, 179 Wn.2d at 598-99). "Actual and substantial prejudice" requires the petitioner to "show that the outcome of the guilty plea proceedings would more likely than not have been different had the error not occurred." *Id*. In the context of a guilty plea, this means "showing that the petitioner would have refused to plead guilty and instead would have insisted on proceeding to trial." *Id*. at 62-63. An evaluation of prejudice is objective and conducted from the perspective of a rational person. *Id*. at 66.

Mr. Nelson argues that but for the error, he would not have pleaded guilty. Other than arguing that no rational person would agree to a sentencing enhancement that should not apply, he does not attempt to demonstrate that he would have insisted on going to trial.[3] Mr. Nelson attempts to distinguish the holding in *Buckman* by arguing that the error actually increased his sentence by 18 months, and was therefore substantive, and not simply procedural. *Buckman*, 190 Wn.2d at 68-69 (actual and substantial error requires there be a defect of substance, not merely procedure). We agree that had Mr. Nelson recognized the error at sentencing, he would not have agreed to the enhancement's application. But this is not the same as arguing that he would have insisted on going to trial.

On the contrary, the record suggests that had he recognized the issue, Mr. Nelson would have most likely pleaded guilty while arguing that the enhancement should not apply. Nothing in the record suggests that he would have insisted on a trial. Instead, the record shows that three months before pleading guilty, Mr. Nelson was advised by his attorney that he would most likely be found guilty of murder in the first degree based on the investigation to date. Appendix C to Supplemental Brief of Petitioner. At sentencing, Mr. Nelson pleaded guilty as charged without the benefit of a favorable plea

---

[3] In his supplement brief, Mr. Nelson repeatedly asserts that he "plead guilty" to the illegal firearm enhancement. To be clear, the firearm enhancement is not a separate charge and Mr. Nelson did not plead guilty to the enhancement.

11

agreement. Instead, the prosecutor asked for a high-end standard range sentence, while Mr. Nelson argued for an exceptional sentence below the standard range. Mr. Nelson indicated that he was pleading "straight up," without the benefit of an agreed recommendation because he wanted to take responsibility for his actions. There is no evidence in the record to suggest that trial was a viable alternative. And no evidence that the 18-month enhancement was pivotal in his decision to plead guilty to the charges, one of which had a standard range of 341 to 434 months. (Judgment and sentence, App. A to Resp. Supp. Br.) Similar to the holding in *Buckman*, we find that Mr. Nelson has failed to show prejudice from the error that would entitle him to withdraw his plea of guilty.

B.   VICTIM IMPACT STATEMENTS

Next, Mr. Nelson contends that the victim impact statements by persons employed by the Pierce County District Court created the appearance of bias by the sentencing judge. After reviewing the record, we find that Mr. Nelson has failed to carry his burden of showing actual or perceived bias sufficient to violate due process.

A criminal defendant has a due process right to a fair trial by an impartial judge. WASH. CONST. art. I, § 22; U.S. CONST. amends. V, VI, XIV. "Impartial" means the absence of actual or apparent bias. *State v. Moreno*, 147 Wn.2d 500, 507, 58 P.3d 265 (2002). "'The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.'" *State v. Post*, 118 Wn.2d 596, 618, 826 P.2d 172, 837 P.2d 599 (1992) (quoting *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972)).

Mr. Nelson contends that the proceedings in this case violated the appearance of fairness doctrine. The appearance of fairness doctrine provides that a "judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing." *State v. Ladenburg*, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992). Along with the Canons on Judicial Conduct, the doctrine requires a judge to recuse on any case of actual bias or where the judge's impartiality might reasonably be questioned. *State v. Dominguez*, 81 Wn. App. 325, 328, 914 P.2d 141 (1996). In order to succeed on his appearance of fairness claim, Mr. Nelson must prove actual or potential bias. *In re Pers. Restraint of Swenson*, 158 Wn. App. 812, 818, 244 P.3d 959 (2010). In other words, he must overcome the presumption that a judge acts without bias or prejudice. *Jones v. Halvorson–Berg*, 69 Wn. App. 117, 127, 847 P.2d 945 (1993).

Mr. Nelson argues that victim impact statements provided by Pierce County District Court employees violated the appearance of fairness doctrine and his due process rights. He does not allege actual bias. Instead, he contends that an objective observer would find a conflict when victim statements are provided by people working in the same building and the same court system as the Superior Court. Mr. Nelson points out that while Judge Murphy stated on the record that he did not know the victim, he did not expressly disclaim familiarity with any of the people providing victim impact statements.

13

These allegations fail to show actual or potential bias. Mr. Nelson fails to cite any authority suggesting that a judge should recuse in circumstances such as this. Despite his claim of institutional bias, a judge is not required to recuse simply because a participant works in the same building or the same state judicial system.

Mr. Nelson also attempts to benefit from the judge's lack of specific disclaimer as to the people presenting victim impact statements, but Mr. Nelson failed to raise this issue below. *See Swenson*, 158 Wn. App. at 818 (defendant must act promptly in requesting recusal). Had he done so, the record could have been sufficiently developed, and the judge could have clarified whether he knew any of the people who provided statements. Failing to do so, Mr. Nelson does not get the benefit of the doubt on collateral review. Instead, we presume the judge acted without bias or prejudice in the absence of any evidence to the contrary. *Jones*, 69 Wn. App. at 127. Mr. Nelson's failure to prove potential bias sufficient to require the judge to recue from this matter is fatal to his argument on collateral attack. *See Swenson*, 158 Wn. App. at 820 ("without a specific showing of actual or potential bias, Swenson cannot establish a violation of the appearance of fairness doctrine or CJC Canon 3[.1].").

C. FINDINGS OF FACT AND SAME CRIMINAL CONDUCT

In his initial PRP, Mr. Nelson makes two arguments that are not further developed in the briefing. First, he argues that the judge imposed an exceptional sentence requiring

findings of fact and conclusions of law. *See* RCW 9.94A.535. The record does not support Mr. Nelson's argument. He did not receive an exceptional sentence.

Mr. Nelson also claims that his offender score was miscalculated because several of his convictions constituted the same criminal conduct for purposes of sentencing. Factually, the record does not support Mr. Nelson's argument. Legally, he waived the issue by failing to raise it at sentencing.

"Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. RCW 9.94A.589(1)(a); *State v. Vike*, 125 Wn.2d 407, 410, 885 P.2d 824 (1994). The phrase is construed narrowly and "same criminal conduct" will not be found if any of the three elements are missing. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). To determine whether each crime shared the same intent, we objectively look at whether one crime furthered the other, or whether there was a substantial change in the nature of the criminal objective. *State v. Dunaway*, 109 Wn.2d 207, 215, 743 P.2d 1237 (1987) (kidnapping committed to further the robbery but murders committed after robbery distinct and not in furtherance of robbery). In *State v. Lessley*, the court found that the objective intent of the burglary was complete the moment the defendant entered the victim's residence armed with a deadly weapon and his intent to subsequently kidnap his girlfriend from the home was distinct. 118 Wn.2d 773, 778-80, 827 P.2d 996 (1992). Even though the *Lessley* court arrived at its

15

conclusion on the analysis of intent alone, it also held that the burglary anti-merger statute supports this result providing, "Every person who, in the commission of a burglary shall commit any other crime, may be punished therefore as well as for the burglary, and may be prosecuted for each crime separately." *Id*.; RCW 9A.52.050. Where current offenses are presumed to count separately, the defendant has the burden to prove same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013).

Mr. Nelson has not met his factual burden. None of the counts in the present case constitute "same criminal conduct." The murder and malicious mischief counts have distinct victims (Mrs. Ryan and Mrs. Ryan's daughter respectively) from the burglary and animal cruelty charges (the family home and dog being owned by both Teresa Ryan and her husband Brent Ryan). The objective intent for burglary and animal cruelty are distinct where neither count furthered the other. Just like the *Lessley* case, Mr. Nelson completed burglary the moment he entered the family home with a gun whether or not he subjectively intended to kill the dog or speculatively intended to commit some other crime against his ex-girlfriend if he had found her.

Under RCW 9.94A.589(1)(b), when a court sentences multiple current "serious violent offenses" arising from distinct conduct only the one with the highest level is scored. Here, the murder count is the highest "serious violent offense." RCW 9.94A.525(9), .589. "[S]erious violent offenses" run consecutive to each other. RCW

9.94A.589. All other offenses run concurrent. RCW 9.94A.589(1)(b). The score for the "serious violent offense" includes all other current "violent" and non-violent offenses, but not the other current "serious violent offenses." *Id*. Thus, because Burglary is worth 2 points and malicious mischief and animal cruelty are each worth one point, the correct offender score for the murder is 4. RCW 9.94A.525(9). The court entered a standard sentence based on this score.

Even if the same criminal conduct calculation were to apply, Mr. Nelson waived review of its application by failing to raise the issue at sentencing. While generally a defendant cannot waive a miscalculated offender score, waiver can be found when the alleged error involved a matter of trial court discretion. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 874, 50 P.3d 618 (2002). "Application of the same criminal conduct statute involves both factual determinations and the exercise of discretion." *State v. Nitsch*, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000). By failing to raise this issue below, Mr. Nelson has waived it.

### D.   INEFFECTIVE ASSISTANCE OF COUNSEL

The final issue we review is Mr. Nelson's claim of ineffective assistance of counsel. Mr. Nelson argues that his attorney was ineffective in several respects. First, he argues that his attorney was ineffective for failing to object to the application of the firearm enhancement to an unranked felony. We note that even if Mr. Nelson is correct, the remedy is to place him back in the position he would have been without the error.

17

*State v. Drath*, 7 Wn. App. 2d 255, 270, 431 P.3d 1098 (2018).  Since we have already granted Mr. Nelson's request for resentencing, we decline to consider whether counsel's failure to spot this issue amounts to ineffective assistance of counsel.

Next, Mr. Nelson contends that his attorney was ineffective for failing to object to the lack of findings to support an exceptional sentence.  As we noted above, Mr. Nelson did not receive an exceptional sentence and the court was not required to enter written findings of fact and conclusions of law.

Mr. Nelson also alleges that his trial attorney was ineffective in misadvising him of the standard sentencing range on his original charges.  This issue was not raised in Mr. Nelson's original petition.  Instead, it was first raised by Mr. Nelson's attorney in the supplemental brief filed more than three years after Mr. Nelson was sentenced.  In the supplemental brief, Mr. Nelson contends that three months before his plea, his attorney mistakenly told him his low-end standard range was 47½ years.  This is a new and separate claim.  *See In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447, 309 P.3d 459 (2013).  Because it was filed after the one-year time limit, the claim is untimely and will not be considered.  RAP 16.8(e).

Mr. Nelson's final claim of ineffectiveness is that his attorney pressured him to hurry and plead guilty without a beneficial plea agreement.  In the context of a collateral attack, a petitioner demonstrates actual and substantial prejudice by proving a claim of ineffective assistance of counsel under *Strickland*.  *In re Pers. Restraint of Dalluge*, 152

Wn.2d 772, 787, 100 P.3d 279 (2004).  Under *Strickland v. Washington*[4], Mr. Nelson

bears the burden of showing (1) that his counsel's performance fell below an objective

standard of reasonableness based on consideration of all the circumstances and, if so, (2)

there is a reasonable probability that but for counsel's poor performance the outcome of

the proceedings would have been different.  *State v. McFarland*, 127 Wn.2d 322, 334–35,

899 P.2d 1251 (1995).

In reviewing the record for deficiencies, there is a strong presumption that

counsel's performance was reasonable.  *Id.* at 335.  The burden is on a defendant alleging

ineffective assistance of counsel to show deficient representation.  *Id.*  The

reasonableness of counsel's performance is to be evaluated from counsel's perspective at

the time of the alleged error and in light of all the circumstances.  *Kimmelman v.

Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).  When counsel's

conduct can be characterized as a legitimate trial strategy or tactics, performance is not

deficient.  *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Mr. Nelson fails to demonstrate that he was coerced into pleading guilty without a

benefit.  According to his own affidavit, he received and was able to review his

paperwork for more than a week before his plea and sentencing.  Each page of the

statement of defendant on plea of guilty contains the hand-written initials of Mr. Nelson

---

[4] 466 U.S. 687, 690-92, 104 S. Ct. 2052, 80 L. Ed. 2d 180 (1984).

and his attorney. In response to the judge's questions, Mr. Nelson affirmed that his attorney had gone over the document with him, and he did not have any questions. He specifically denied that he was pleading guilty in response to any threats or coercion. The decision to plead guilty without the benefit of a favorable agreement was strategic. Mr. Nelson told the court that he was pleading straight up to accept responsibility in the hopes that the court would accept his argument for an exceptional sentence below the standard range. On this record, we do not find Mr. Nelson's trial attorney ineffective.

## CONCLUSION

We grant Mr. Nelson's petition and remand for resentencing in light of the erroneous application of the firearm's enhancement. We deny the remaining issues raised by Mr. Nelson and affirm his convictions.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Siddoway, J.

20